IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MAURICE ANTHONY DE'HOUITT ALBORNOZ, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> WARDEN WASHBURN, et al., ) </br> ) </br> Defendants. ) | </br></br></br></br></br>NO. 3:20-cv-00143</br></br>JUDGE CAMPBELL</br>MAGISTRATE JUDGE HOLMES |

## MEMORANDUM AND ORDER

Plaintiff Maurice Anthony De'Houitt Albornoz, an inmate of the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis. (Doc. No. 6.)

The case is before the Court for ruling on the IFP application and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 6) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of

Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility where Plaintiff is housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the

3

Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

The below recitation of Plaintiff's allegations represents the Court's best effort to decipher Plaintiff's handwriting and to construct a chronological narrative from the disjointed presentation of his complaint.

Plaintiff alleges that he was transferred to TTCC after being found guilty of a disciplinary violation at his prior place of confinement, Turney Center Industrial Complex, where he "was put on an extreme amount of anti[psychotic] medication which made [him] violent." (Doc. No. 1 at 8.) On December 2, 2019, at around 7:00 p.m., Plaintiff was attacked by gang members at TTCC after he refused to make a payment they demanded from him. (*Id.*) After the attack, at around 8:15 p.m., Plaintiff requested emergency medical help from a nurse, pod officer, and Sergeant Crawford. (Doc. No. 13.) He was told to fill out a sick call and report to medical the next morning. (*Id.*)

Plaintiff called the "PREA line" the next morning, between 8:00 and 9:00 a.m., but he was not allowed to leave his unit. (*Id.*) Case Manager Wensky told Plaintiff that he would "take care of it and get [Plaintiff] help," but it was not until late that evening that Plaintiff was taken to medical. (*Id.*) In the meantime, Plaintiff was forced to wait in his cell, in the same unit with his attackers. (*Id.*) Over the course of the day, he was forced by gang members to place cellphone calls to his family so that money could be extorted from them. (*Id.*) At around 7:45 p.m., the sprinkler system went off, and gang members used towels and blue jeans to stop water from escaping Plaintiff's cell. (*Id.*) Plaintiff was made to stay in his cell for hours while wet and cold. (*Id.*)

4

Finally, at around 9:00 or 9:30 p.m., Plaintiff was taken from his cell to be escorted to medical. (*Id.* at 12.) However, two gang members were waiting in the rotunda outside the Fox Bravo pod door, where they tried to trip Plaintiff but failed. (*Id.*) Lieutenant Murray and an unknown sergeant then picked Plaintiff up and slammed him on the left side of his face. (*Id.*) Murray then made Plaintiff remove his boots and sent him outside to Captain Jeffery, who forced him to walk barefooted to medical in freezing temperatures, despite the fact that Plaintiff regularly used a wheelchair and could have been pushed in that chair to medical. (*Id.*)

When he arrived in the medical unit at 9:45 p.m. (*id.*), he was not provided dry clothes, food, or medical attention for six hours. (*Id.* at 11.) He was not given pain medication at any point. (*Id.* at 12.) It was not until three weeks after the attack that x-rays of Plaintiff's jaw were ordered, revealing a broken left lower jawbone. (*Id.*) Dr. Henson told Nurse Petty to tell Plaintiff that corrective surgery would not be ordered, but a week-and-a-half later, Dr. Henson saw Plaintiff again and told him that corrective surgery should have been ordered, and now he will have to have his jaw re-broken to correct the problem. (*Id.* at 11, 14.) Plaintiff alleges that he has not yet had corrective surgery, and that he lost over 30 pounds in 3 weeks. (*Id.* at 14.)

Plaintiff claims that the mistreatment described above violated his constitutional rights, and that damages and injunctive relief should be awarded. (*Id.* at 10.)

**D. Analysis**

Plaintiff's allegations concerning the failure to render timely or appropriate medical care after his assault by gang members support an Eighth Amendment claim of deliberate indifference to a serious medical need. *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017). The claim has both objective and subjective components. The objective component requires that Plaintiff have a sufficiently serious medical need related to his injuries from the attack. *See Rhinehart v. Scutt*, 894

5

F.3d 721, 737 (6th Cir. 2018). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). The subjective component requires that Defendants understood yet consciously disregarded Plaintiff's need for treatment of those injuries. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference thus entails conduct that "amounted to more than ordinary negligence or medical malpractice." *Atkins v. Parker*, No. 19-6243, 2020 WL 4932748, at *4 (6th Cir. Aug. 24, 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

Plaintiff alleges that the attack left him with a broken jaw, swelling, and abrasions. (Doc. No. 1 at 12, 13.) At this initial stage, the Court finds these allegations sufficient to establish that Plaintiff had an obvious injury requiring medical attention, therefore satisfying the objective requirement of his Eighth Amendment claim. As to the subjective requirement of deliberate indifference to this objectively serious medical need, Plaintiff alleges that he was refused medical attention by a nurse, a pod officer, and Sergeant Crawford on the night of the attack, and that he was not examined in the medical unit until well over 24 hours after the attack and subsequent trauma to his jaw during his escort to medical. He further alleges that TTCC medical personnel did not secure an x-ray of his jaw until three weeks later, refused to give him pain medication at any time, and still refuse to provide him with corrective surgery even after confessing that he has needed it all along. These allegations are sufficient for purposes of initial review to establish a colorable claim of deliberate indifference to Plaintiff's serious medical needs. The case therefore survives PLRA screening and will proceed.

However, the Court will not at this time further review the claims of the complaint or order that process issue to any Defendant. As mentioned above, the complaint is jumbled and difficult

to decipher. It names 39 individual defendants, at least 13 of whom are unknown, or John Doe, defendants. It is not clear how many of those named Defendants were involved in Plaintiff's treatment following his attack and injury. However, it *is* clear that Plaintiff alleges what appears to be a violation of his Eighth Amendment right to medical care. He also alleges a need for "an extreme amount of anti[psychotic] medication" prior to arriving at TTCC. (Doc. No. 1 at 8.) From his more recent filings, it appears that he is housed in segregation where he is allegedly denied timely delivery of his legal mail. (*See* Doc. Nos. 8–10.) Plaintiff requests appointment of counsel in light of these circumstances (*see* Doc. No. 10 at 2), a request the Court finds justified.

An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Rather, the appointment of counsel is a "privilege justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (citations omitted). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the district court, considering the type of case presented and the ability of the plaintiff to represent himself. *Id.* at 604, 606. The exceptional circumstances of this case, described above, warrant the appointment of counsel for Plaintiff.

### III. FURTHER ACTION

In sum, the Court finds that the complaint states a colorable claim of deliberate indifference to serious medical needs, in violation of the Eighth Amendment. The Court further finds that appointment of counsel is justified in this case. Accordingly, the Clerk of Court is **DIRECTED** to appoint counsel for Plaintiff from the Civil Appointments Panel and notify the Court when counsel has been appointed.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE